IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RILWAN AKINOLA,

    Plaintiff,

    v.                                                                    Civil Action No. DKC-22-657

OFFICER LAVIN, CO II, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Plaintiff Rilwan Akinola's complaint, filed pursuant to 42 U.S.C. § 1983, was received by the Clerk on March 17, 2022.[1]  (ECF No. 1-1).  His complaint centers on an incident in which he slipped and fell, and his subsequent medical treatment for resulting injuries.  *Id.*  As defendants, Mr. Akinola named Officer Lavin, CO II, Nurse Amy Stafford-Shroyer, and Corizon Health, Inc.[2]  Now pending before the court is a motion to dismiss or for summary judgment filed by Officer Lavin (ECF No. 10), which Mr. Akinola opposed (ECF No. 22).[3]

No hearing is deemed necessary as the issues have been fully briefed.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons set forth below, Officer Lavin's motion, construed as motion to dismiss, will be granted.

---

[1]  Mr. Akinola's complaint (ECF No. 1-1) included an attachment (ECF No 1-2) which appears to be a duplicate copy of the complaint.  This memorandum will only cite to the original complaint (ECF No. 1-1).

[2]  Mr. Akinola's complaint initially named "Corizon Health Sources" and "Nurse Amy." (ECF No. 1-1).  These defendants were later identified by counsel as Corizon Health, Inc. (ECF No. 15) and Amy Stafford-Shroyer (ECF No. 17).

[3] Also pending is Corizon Health, Inc. and Nurse Stafford-Shroyer's motion to dismiss.  (ECF No. 23).  In part because of the bankruptcy filing of Corizon Health, resolution of that motion is deferred.

BACKGROUND

I.      Complaint Allegations

On the morning of September 23, 2021, while confined at Western Correctional Institution ("WCI"), Mr. Akinola and his cell mate were escorted to use the showers by Officer Lavin.  (ECF No. 1-1 at 1-2).[4]  Following the shower, both inmates were escorted by Officer Lavin back to their cell.  *Id.* at 2.  Both inmates were handcuffed, but Officer Lavin was only physically supporting Mr. Akinola's cell mate.  *Id.*  Mr. Akinola states that Officer "Lavin told me to go, telling me to proceed, even though no other officer was there."  *Id.*  Mr. Akinola then slipped and fell "while restrained in a fashion that prevented him from bracing for the fall" or "protecting himself."  *Id.* He sustained injuries to his lower back, left arm, left hip, left leg, and left ankle.  *Id.*  He "remained in constant excruciating pain for hours."  *Id.*  Mr. Akinola states that he should have been escorted by an officer to support him and prevent him from falling.  *Id.*  He maintains that Officer Lavin's conduct violated prison "rules, policies, and regulations" and amounted to "gross- negligence" that placed Mr. Akinola's "health and safety in imminent danger of serious physical injury."  *Id.* at 5.

Mr. Akinola purports to raise several claims stemming from this incident, including gross negligence; a violation of his First, Fourth, Sixth, and Eighth Amendment rights; and a violation of his right to procedural and substantive due process.  *Id*. at 4-5.  He states that Officer Lavin "acted with callous disregard" for his safety, and his "actions amounted to the wanton and truly unnecessary infliction of pain."  *Id*. at 5.  He also alleges that Officer Lavin exhibited "deliberate medical indifference" because he did not take action to secure treatment for Mr. Akinola even though he "knew the extent of the injuries sustained by seeing it occur."  *Id*. at 6.

---

[4]   Citations refer to the pagination assigned by the court's Case Management and Electronic Case File (CM/ECF) system.

II.      Officer Lavin's Motion

Officer Lavin included material with his motion:  copies of the Administrative Remedy
Procedure ("ARP") grievances that Mr. Akinola filed with respect to this incident, (ECF Nos. 10-
2, 10-3), and portions of Mr. Akinola's medical records, (ECF No. 11).  In his initial ARP dated
September 29, 2021, Mr. Akinola states that-at about 8:50 am- Officer Lavin handcuffed him, then
he "stepped out of the shower and proceeded to walk towards the steps with no officer to escort
[him]." (ECF No. 10-2 at 3).  He further notes that as he was "walking down the steps" he "slipped
and fell really hard."  *Id.* at 4.  Officer Lavin "did not call for assistance, nor did he tell [Mr.
Akinola] to wait."  *Id.*  After Mr. Akinola fell, he "asked Officer Lavin to call medical for [him]."
*Id.* at 4.  However, he was not seen by medical for four hours.  *Id.*  The ARP was procedurally
dismissed because Mr. Akinola did not "separate [the] medical issue and [the] custody issue."  *Id.*
at 3.

Mr. Akinola resubmitted his ARP on October 12, 2021.  *Id.* at 1.  His claims were
functionally identical to his original ARP, again maintaining that Officer Lavin failed to support
and escort him after his shower, and that he slipped while handcuffed and was injured as a result.
*Id.* at 1-2.  This ARP was also procedurally dismissed for failing to "resubmit the request in
accordance with the coordinator's instructions." *Id.* at 2.

As is relevant to Mr. Akinola's claims in the complaint, the medical records include the
notes from the day of Mr. Akinola's fall.  Those notes detail that Housing Unit 4 called the medical
unit and requested an evaluation of Mr. Akinola.  (ECF No. 11 at 2).  The notes of an examination
at 2:20 p.m. reflect that Mr. Akinola fell while "cuffed behind his back," and that his "feet were
wet and he had shower sandals on."  *Id.*  Mr. Akinola complained of left foot, ankle, and hip pain,

but no bruising or swelling was noted at the time.  *Id.*  Defendant Amy Stafford-Shroyer, who examined Mr. Akinola, prescribed muscle rub and Tylenol.  *Id.*

In his motion to dismiss, or in the alternative, for summary judgement, Officer Lavin argues that Mr. Akinola has failed to state a valid Eighth Amendment claim against him.  (ECF No. 10-1 at 7).  Further, he argues that due process protections are not triggered by his alleged lack of due care.  *Id.* at 10.  Finally, he asserts that any suit against him in his official capacity is barred by the Eleventh Amendment, and that he is entitled to qualified immunity.  *Id.* at 13.

III.    Mr. Akinola's Response in Opposition

Mr. Akinola filed a response opposing Officer Lavin's motion to dismiss, or alternatively, for summary judgment.  (ECF No. 22).  He reiterates that Officer Lavin failed to follow procedure when he did not support Mr. Akinola while walking after his shower.  *Id.* at 1.  He emphasizes that he slipped and fell "down metal steel steps, and because his hands were cuffed behind his back, he could not break his fall and was badly injured.  *Id.* at 2-3.  He concludes that "through negligence" Officer Lavin "deviated from… policy, a duty of care was owed to [Mr. Akinola]."  *Id.* at 6. Officer Lavin "breached that duty, and injury resulted – due to failure to follow their own policy." *Id.* at 6-7.

STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint."  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019).  To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

4

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).  However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949-50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259-60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not … without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

Upon review, the assertions in the complaint fail to state a claim against Officer Lavin and the federal claims against him will be dismissed.  Furthermore, once all the federal claims are resolved, the court will decline to exercise supplemental jurisdiction over any remaining state law claims and those will be dismissed without prejudice.

ANALYSIS

Many of Mr. Akinonla's claims, including a violation of his First, Fourth, and Sixth Amendment rights; and a violation of his rights to procedural and substantive due process, do not match the substance of Mr. Akinola's complaint.  The court is not obligated to accept Mr. Akinola's labels.  Even if it were, it would be required to dismiss any claims inadequately stated because Mr. Akinola proceeds *in forma pauperis*.  *See* 28 U.S.C. § 1915 (e)(2)(B)(ii).

Based on the factual background set forth in the complaint and fully outlined above, the court finds that Mr. Akinola has not proffered facts alleging a violation of his rights to procedural or substantive due process, or his First, Fourth, or Sixth Amendment rights.  Construing the complaint liberally, Mr. Akinola has, at best, put forth a claim that the Officer Lavin was negligent and violated his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment.  His complaint is therefore analyzed accordingly.

I.      Eighth Amendment Claims

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const, Amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).  Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency …'" *Id.* (citation omitted).  Thus, the Eighth

Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Because there is no suggestion in the record that Officer Lavin pushed, shoved, or otherwise used force to cause Mr. Akinola's injuries, and because he is raising claims of failure to safeguard him and render medical assistance, only the deliberate indifference standard is applicable here.

To establish liability, a two-part inquiry that includes both an objective and a subjective component must be satisfied. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an

excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id*. at 837.  However, actual knowledge of a substantial risk does not alone impose liability.  Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

Further, "[a]n accidental or inadvertent response to a known risk is insufficient to create Eighth Amendment liability." *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it … [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one).

II.   Officer Lavin

Mr. Akinola alleges that Officer Lavin exhibited deliberate indifference when he failed physically to support him after a shower, allowing him to slip and fall, and when he failed to secure medical assistance for Mr. Akinola after the fall.  (ECF No. 1-1).  Officer Lavin argues that Mr. Akinola has failed to state a valid Eighth Amendment claim against him.  (ECF No. 10-1 at 7). Further, he asserts that any suit against him in his official capacity is barred by the Eleventh Amendment, and that he is entitled to qualified immunity. *Id.* at 13.

Most slip and fall cases, particularly in shower areas, present claims of simple negligence that are not cognizable under § 1983, even when the prisoner is handcuffed, or the prison's procedures require escort. *See*, for example, *Stevens v. Jividen*, Civil Action No. 1:18cv140, 2021 WL 1539154, *6-8 (N.D.W.Va. January 5, 2021), citing, inter alia, *Martinez v. Cornell*, No. 5:12-

CT-3183-FL, 2014 WL 3955073 (E.D.N.C. August 13, 2014), where an inmate, handcuffed behind his back, broke his arm when he stepped into a shower and sued the escorting officer who failed to keep a steadying hand on him. *Accord, Cadle v. Rubenstein*, Civil Action No. 1:17cv218, 2018 WL 6628961, at *5-6 (N.D.W.Va. October 24, 2018) (finding no cause of action against an officer who failed to protect prisoner from serious injury by physically assisting him to descend stairs while cuffed and shackled, even if the officer violated policy by not maintaining physical contact as he went down the stairs.) The few cases that find the allegations sufficient to sustain a claim contain facts that are more egregious. In *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016), the court noted that:

> Prisons are not required to provide a 'maximally safe environment,' *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001), but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates. *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013); *Smith v. Peters*, 631 F.3d 418, 420 (7th Cir. 2011); *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004).

That court found that "forcing someone to walk handcuffed and unaided down stairs needlessly strewn with easily removable milk, food, and garbage," as alleged by the prisoner, "poses an unreasonable peril." *Anderson*, 835 F. 3d at 683. The court distinguished cases dealing with slippery, wet floors that were unavoidably wet, such as in showers. *Id.*

Mr. Akinola does not state a claim against Officer Lavin for a violation of his Eighth Amendment rights. Mr. Akinola slipped and fell, causing injury. Officer Lavin's failure to follow a purported policy that may have avoided the injury, at best, would support a finding of negligence.[5] Officer Lavin's decision to escort Mr. Akinola's cell mate, and not to call for another

---

[5] Negligence is a state law tort claim. *See Stracke v. Est. of Butler*, 465 Md. 407, 420-21 (2019) ("simple negligence is 'any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm.' On the other hand, this court has explained that 'gross negligence is

officer to assist in escorting Mr. Akinola, at best amounts to an error in judgment, albeit one that had an unfortunate consequence for Mr. Akinola. *See Grayson*, 195 F.3d at 695-96. Mr. Akinola's allegation that he slipped after showering while unsupported by Officer Lavin, without more, fails to state a plausible violation of Mr. Akinola's Eighth Amendment rights.

Mr. Akinola's allegation that Officer Lavin exhibited "deliberate medical indifference" because he did not act to secure treatment for Mr. Akinola (ECF No. 1-1 at 6) similarly fails. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Mr. Akinola proffers no facts upon which this claim could be substantiated. In his complaint, he concedes that he was seen by Nurse Stafford-Shroyer the day of his fall. Further, he does not put forth any facts from which the court could find that Officer Lavin deliberately delayed, impeded, or otherwise failed to provide medical care to Mr. Akinola. Accordingly, this claim cannot proceed.

III.    Qualified Immunity

Furthermore, Officer Lavin is entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it

---

an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'") (internal citations omitted).

ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).  Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this court.  Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised.  *Katz*, 533 U.S. at 200.  Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th

11

Cir. 2003)).  "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful.  *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, the facts alleged in the complaint do not show that Officer Lavin's conduct violated Mr. Akinola's constitutional rights.  However, even if it did, any alleged right was not clearly established.  Officer Lavin could not have understood that his failure to physically support Mr. Akinola after his shower violated Mr. Akinola's constitutional rights.  He is entitled to qualified immunity on these claims.

CONCLUSION

For the foregoing reasons, Mr. Akinola's complaint is dismissed with respect to all claims against Officer Lavin.  A separate Order follows.

February 22, 2023

                          /s/
DEBORAH K. CHASANOW
United States District Judge