IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RILWAN AKINOLA

   v.                         :   Civil Action No. DKC 22-0657

CORIZON HEALTH SERVICE, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case brought by a former prisoner is the motion to stay filed by Defendant Amy Stafford-Shroyer, (ECF No. 73), and the motion to dismiss or, in the alternative, for summary judgment filed by Defendant Correctional Officer Darrell Lavin, (ECF No. 81). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to stay will be denied as moot, and the motion to dismiss or for summary judgment will be denied.

## I.  Background

The facts of this case were described in an earlier opinion, (ECF No. 31), after Plaintiff Rilwan Akinola ("Plaintiff" or "Mr. Akinola") filed his first complaint *pro se*. In light of counsel's appointment to represent Mr. Akinola and the subsequent filing of an amended complaint, the court will provide a summary of the facts relevant to the pending motions.

On the morning of September 23, 2021, while confined at Western Correctional Institution ("WCI"), Mr. Akinola and his cellmate, Michael Wilson, were escorted by Officer Lavin to use the showers. (ECF No. 70 ¶¶ 1, 11, 13). To reach the showers, the men had to walk up a metal staircase. (*Id*. ¶ 13). After the men showered, Officer Lavin returned to escort the men back to their cell, and Mr. Wilson noted to Mr. Akinola that Officer Lavin was not accompanied by another officer. (*Id*. ¶ 16). Mr. Akinola understood Mr. Wilson's comment to be a reference to the practice and policy at WCI that one escorting officer accompanies each shackled inmate during transport, "with the officer physically holding and supporting the inmate." (*Id*. ¶¶ 17-18). Officer Lavin placed both men in handcuffs, with their hands shackled behind their backs, and opened the gate to leave the shower area. (*Id*. ¶ 19). Mr. Akinola asked Officer Lavin "it's only you – where is the other officer at[?]" (*Id*. ¶ 21). According to Mr. Akinola,

> Officer Lavin flippantly responded to Mr. Akinola, "you'll be fine," and directed Mr. Akinola to "come out" through the open gate; Officer Lavin backed up this verbal command with a hand gesture indicating that Mr. Akinola was under orders to walk. In response to Mr. Akinola's mention of the fact that there was no second officer to escort him, Officer Lavin made clear that he was nonetheless ordering Mr. Akinola to walk out of the shower and down the stairs: "I'm giving you a direct order," said Officer Lavin.

(*Id.* ¶ 23).  Officer Lavin took hold of Mr. Wilson to escort him, leaving Mr. Akinola without an escort.  (*Id.* ¶ 24).  Officer Lavin again commanded Mr. Akinola to walk down the stairs unescorted, repeatedly saying "go ahead."  (*Id.* ¶ 25).  Officer Lavin was escorting Mr. Wilson behind Mr. Akinola and moving quickly, causing Mr. Wilson to push up against Mr. Akinola's heels.  (*Id.* ¶ 27).  Mr. Wilson told Officer Lavin to slow down because the area was wet from the shower, but Officer Lavin "did not withdraw his order."  (*Id.*).   Mr. Akinola began walking down the metal staircase.  His shoes were wet from the shower, and the handcuffs behind his back "prevented him from balancing and from grabbing hold of the rail."  (*Id.* ¶ 29).   Mr. Akinola "took 3-4 steps, slipped, and fell. With his hands shackled behind his back, he could not break this fall.  He fell all the way to the bottom of the stairwell—roughly 20 steps."  (*Id.*).  Mr. Akinola first landed on his left knee, which "immediately began to swell up and to cause him severe pain."  (*Id.* ¶ 30).  He also injured his shoulders, back, arm, hip, ankle, and leg in his fall.  (*Id.*).

Officer Lavin ordered Mr. Akinola to "get up," and Mr. Akinola protested, "I'm in pain."  (*Id.* ¶ 31).  "Officer Lavin forced him to get up anyway, and exacerbated the pain to Mr. Akinola's injured knee by forcing him to walk (this time escorted by Officer Lavin) to his cell. Mr. Akinola could barely walk, and doing so, even

with an escort, exacerbated his existing pain." (*Id.*). Mr. Akinola told Officer Lavin that he was "in severe pain and needed immediate medical attention." (*Id.* ¶ 32). Officer Lavin "indicated he would arrange for medical attention" but did not immediately return. (*Id.*). Mr. Akinola was in excruciating pain in his cell for approximately one to two hours; the pain was apparent enough to Mr. Wilson that he began banging on the door of their cell to get an officer's attention. (*Id.*). Officer Lavin returned after an hour or two and "again said that he would call medical; he 'was working on it.'" (*Id.*). It took another hour or two before Mr. Akinola received any medical attention.[1] (*Id.*).

Mr. Akinola's initial complaint was docketed in this court on March 17, 2022, naming Officer Lavin, Nurse Amy Stafford-Shroyer, and Corizon Health, Inc. as Defendants.[2] (ECF No. 1-1).

> Officer Lavin filed a motion to dismiss, or in the alternative, for summary judgment with respect to the claims against him on August 3, 2022. (ECF No. 10). The court granted the motion, construed as a motion to dismiss, on February 22, 2023, and dismissed all claims against Officer Lavin. (ECF Nos. 31-32). Mr. Akinola, now represented by counsel, filed [a]

---

[1] Mr. Akinola's time in the medical unit is related to his claim against Ms. Stafford-Shroyer, who was the nurse at that time. These facts are not relevant to the pending motions.

[2] In March 2023, the court stayed the action as to Corizon Health, Inc. because it had "filed bankruptcy proceedings in which an automatic stay [had] been issued." (ECF No. 34). Plaintiff's amended complaint lists only Officer Lavin and Amy Stafford-Shroyer as defendants.

> motion for leave to amend the complaint to re-add the claims against Officer Lavin on September 13, 2024.  (ECF No. 57).

(ECF No. 68, at 1-2).  The court granted the motion to amend the complaint on May 7, 2025, (ECF No. 68), and Mr. Akinola's operative amended complaint was docketed the next day, (ECF No. 70).  Mr. Akinola's amended complaint brings two claims against Officer Lavin - a 42 U.S.C. § 1983 claim for violating the Eighth Amendment, (Count I), and a gross negligence claim, (Count II) — and one count against Ms. Stafford-Shroyer, also under 42 U.S.C. § 1983 for violating the Eighth Amendment (Count III).  Ms. Stafford-Shroyer filed a motion to stay on June 6, 2025, (ECF No. 73), which Plaintiff opposed in a response filed on June 20, 2025, (ECF No. 75).  Ms. Stafford-Shroyer did not file a reply.  Officer Lavin filed a motion to dismiss or, in the alternative, for summary judgment on August 6, 2025.  (ECF No. 81).  Mr. Akinola filed an opposition on August 29, 2025, (ECF No. 87), and Officer Lavin filed a reply on September 18, 2025, (ECF No. 91), with an additional exhibit the next day. (ECF No. 92-1).

## II.  Standard of Review

Defendant moves to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.  The issues raised implicate multiple standards of review.  As will be discussed, the arguments concerning exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA") and

Maryland Prison Litigation Act ("MPLA") will be reviewed under Fed.R.Civ.P. 56(a), while the rest of the arguments will be considered under Fed.R.Civ.P. 12(b)(6).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A complaint must only satisfy Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021)

(quoting *Iqbal*, 556 U.S. at 678).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events*, United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary judgment is appropriate under Fed.R.Civ.P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (Shedd, J., dissenting)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id*. at 249.  Accordingly, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (2008).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[A] complete failure of proof concerning an essential element. . . necessarily renders all other facts immaterial."  *Id.*  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Chung Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  The court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

Apart from the question of administrative exhaustion, the court will consider all issues on a motion to dismiss. The court will deny summary judgment on the administrative exhaustion issues and deny dismissal on all other grounds raised by Defendant.

### A.   Motion to Dismiss or Summary Judgment

When a party moves to dismiss or, in the alternative, for summary judgment, it invokes the court's discretion under Fed.R.Civ.P. 12(d).

> This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. [12-cv-2319-ELH], 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

> The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on

> notice that conversion under Rule 12(d) may
> occur.   *See Moret v. Harvey*, 381 F.Supp.2d
> 458, 464 (D.Md. 2005).

*Jackson v. Sagal*, 370 F.Supp.3d 592, 598 (D.Md. 2019).   For the party opposing summary judgment to adequately raise that it has not had a sufficient opportunity for discovery, "the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the 'specified reasons' why 'it cannot present facts essential to justify its opposition.'"  *Id*.  (quoting Fed.R.Civ.P. 56(d)).

Plaintiff's counsel submitted a declaration pursuant to Rule 56(d) explaining the specific pieces of evidence they seek from discovery.  (ECF No. 87-5).  Plaintiff seeks to depose and possibly obtain written discovery from both Officer Lavin and Michael Wilson, Plaintiff's cellmate at the time.  (*Id*. at 3-4).  Plaintiff argues this discovery is necessary to develop the factual record in the face of the transcript of the administrative hearing, produced by the Maryland Department of Public Safety and Correctional Services, where Plaintiff was not represented by counsel and sought to examine Officer Lavin.   (*Id.* at 3).  Plaintiff also seeks discovery from medical experts about the extent of his injury and any impact from delayed medical care.  (*Id*. at 5).   Because of the outstanding factual questions, the recent appointment of counsel, and the clear request for discovery,

the court will decide the motion on a motion to dismiss standard for all issues, with the exception of the failures to exhaust administrative remedies.

Multiple issues can implicate multiple standards of review. *Johnson v. Maryland Dep't of Lab., Licensing, & Regul.*, 386 F.Supp.3d 608, 612-13 (D.Md. 2019). Failure to exhaust administrative remedies is an affirmative defense, and not part of the Plaintiff's pleading burden. Analysis under the summary judgment standard for these issues is therefore appropriate. *Id.* at 614.

**B.   Administrative Exhaustion under the PLRA (Count I)**

Officer Lavin argues that Plaintiff's amended complaint should be dismissed pursuant to the PLRA because he did not administratively exhaust his claims before filing this lawsuit. (ECF No. 81-1, at 10). Officer Lavin argues that, under the prison mailbox rule, Plaintiff filed his initial complaint the day he signed it, which was four days before his administrative remedies were exhausted. (*Id.* at 13). Mr. Akinola counters on two grounds: 1) that the court should decline to follow the prison mailbox rule in this context, and 2) that the PLRA exhaustion requirement is not applicable because Plaintiff filed his amended complaint after he was no longer incarcerated. (ECF No. 87, at 16-23).

The parties agree that Mr. Akinola pursued the administrative grievance process, and on some of the relevant portions of the

timeline.  (*See* ECF Nos. 81-1, at 13; 87, at 21-22).   The record is unclear and somewhat confused because Mr. Akinola made denial of medical treatment claims against both correctional and medical staff and the Inmate Grievance Office ("IGO") resolved them inconsistently.  On March 9, 2022, the IGO denied relief in IGO No. 20220197 (ARP-WCI-1863-21) for negligence by Officer Lavin while escorting Mr. Akinola and another inmate.  (ECF No. 87-1). It was dismissed as "lacking in merit" and repetitive of ARP-WCI-1743-21.  (*Id*.).   Then on March 15, 2022, a final decision was rendered on IGO No. 20220196, an appeal of the disposition of ARP-WCI-1743-21.[3]  (ECF Nos. 81-1, at 12; 92-1).  Contrary to Officer Lavin's argument, (ECF No. 91, at 7), this denial dealt only with denial of medical care by medical staff.  The letter states: "Your complaint concerning CO Lavin's alleged negligence will be addressed in a separate communication." (ECF No. 92-1).  Despite the forward-looking language, the parties do not provide any further decisions by the IGO.  Instead, proceedings took place assuming that all grievances had been resolved. Plaintiff signed his complaint on March 11, 2022.  (ECF No. 1-1, at 1, 6).  On March

---

[3]  Mr. Akinola filed multiple grievances against prison officials and medical staff.  The Administrative Remedy Procedure ("ARP") grievances and a chronology were attached to Defendants' first motion to dismiss or for summary judgment.  (ECF Nos. 10-2, 10-3, 10-4).

17, 2022, the complaint was received by the clerk of this court and filed on the docket.  (ECF No. 1).

First, it is far from settled that the IGO ever properly considered Plaintiff's grievances against Officer Lavin. Certainly, those claims were not resolved in the March 15 letter, which only dealt with medical staff.  Given the state of the record, Officer Lavin has not clearly established that Plaintiff failed to exhaust administrative remedies prior to signing his complaint on March 11, 2022.  Moreover, the prison mailbox rule need not be as inviolate as Officer Lavin asserts.

The prison mailbox rule states that an incarcerated *pro se* litigant's filing is considered "filed" when it is delivered to the prison mailroom for mailing to the court.  The rule was first established in *Houston v. Lack*, 487 U.S. 266 (1988), where the Court made clear it was a way to avoid penalizing incarcerated litigants for delays that were out of their control.  The rule is often used to determine if a litigant has filed an action before the statute of limitations expires, *see, e.g., Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991), or if a litigant has timely filed an appeal, *see, e.g., United States v. Moore*, 24 F.3d 624, 626 (4th Cir. 1994) (holding "*Houston* governs all notices of appeal filed by prisoners in a criminal proceeding, without regard to whether they are represented by counsel").

Fundamentally, the rule is about fairness. "The *Houston* rule merely serves to create functionally equivalent time bars and provide equal access to the courts for *pro se* prisoner litigants." *Lewis*, 947 F.2d at 736.

The court will decline to follow the prison mailbox rule in this context. Applying the prison mailbox rule, Mr. Akinola's complaint was "filed" on March 11, four days before his claim arguably was administratively exhausted.[4] The complaint was not docketed in this court until March 17, at which point all seem to agree that Mr. Akinola's claim was administratively exhausted. As described above, the rule was put in place to ensure fairness for incarcerated *pro se* litigants, particularly to ensure that they were not penalized for delays beyond their control. *See Lewis*, 947 F.2d at 735 ("Fundamentally, the rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome."). Applying the prison mailbox rule here would penalize Plaintiff for filing a complaint that was, according to the parties, administratively exhausted by the time it was docketed in

---

[4] In the absence of clear record evidence on the date the complaint was delivered to prison officials, courts can use the date a complaint was signed by the plaintiff. *See Hoskins v. Graham*, No. 14-cv-2295-DKC, 2017 WL 2666371, at *3 (D.Md. June 21, 2017). The envelope in which the complaint was mailed reflects a postmark of March 15, 2022. (ECF No. 1-3, at 1).

this court.   The court will deny summary judgment based on the prison mailbox rule.

Even if the prison mailbox rule were to apply, Plaintiff has raised a reasonable argument that there can be no need for administrative exhaustion when the plaintiff is released from prison before filing an amended complaint.   The circuit courts have reached differing conclusions on this question.   Plaintiff urges the court to follow the lead of the United States Courts of Appeal for the Third, Eighth, and Ninth Circuits,[5] which have found that there is no administrative exhaustion requirement when a plaintiff amends his or her complaint after being released from incarceration.   (ECF No. 87, at 17).   On the other side of the coin, the Fifth, Tenth, and Eleventh Circuits[6] have found that the plaintiff's status at the time of his or her original complaint controls whether the administrative exhaustion requirement applies.   (*Id*. at 18).   While the Fourth Circuit has not weighed in on this particular procedural wrinkle, this court has previously explained that administrative exhaustion is not required for a

---

[5] *See Garrett v. Wexford Health*, 938 F.3d 69, 87 (3ᵈ Cir. 2019), *cert. denied*, 590 U.S. 952 (2020); *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025); *Jackson v. Fong*, 870 F.3d 928, 937 (9th Cir. 2017).

[6] *See Bargher v. White*, 928 F.3d 439, 447-48 (5th Cir. 2019); *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019); *Harris v. Garner*, 216 F.3d 970, 981-82 (11th Cir. 2000).

litigant who is "not incarcerated at the time the complaint [is] filed." *Holland v. Prince George's County,* No. 09-cv-2737-DKC, 2011 WL 530559, at *3 (D.Md. Feb. 8, 2011).  In the absence of binding precedent from the Fourth Circuit, the court adopts the rule of the Third, Eighth, and Ninth Circuits as persuasive. Plaintiff's complaint is not defeated by an administrative exhaustion requirement because his operative complaint, (ECF No. 70), was filed after he was released from prison.

The court will deny summary judgment on the administrative exhaustion issue under the PLRA.

### C.   Failure to Plead Deliberate Indifference (Count I)

Officer Lavin argues that Plaintiff's allegations do not rise to the level of deliberate indifference on either of his § 1983 claims.  The court previously considered and rejected this argument in the opinion granting Plaintiff leave to amend his complaint. (ECF No. 68).  The same analysis controls here.

Amendment is not futile if the proposed amended claims could survive a motion to dismiss.  (*Id*. at 2).  In ruling on the motion to amend the complaint, the court applied the two-part test to establish liability in Eighth Amendment violation claims based on deliberate indifference, which contains both an objective component and a subjective component.  (*Id.* at 6 (quoting ECF No. 31, at 6-8)); *see also Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).  The court considered both of Mr. Akinola's deliberate

indifference claims: first, "that Officer Lavin exhibited deliberate indifference by 'ordering and prodding Mr. Akinola to walk down the stairs while wet, shackled, and unescorted' with Mr. Akinola's hands cuffed behind his back," and second, "failing to secure timely medical assistance for Mr. Akinola after the fall." (ECF No. 68, at 7). The court expressly found that, "[t]aken as true and construed in the light most favorable to Mr. Akinola, the allegations in the proposed amended complaint are sufficient to state a plausible Eighth Amendment claim against Officer Lavin." (*Id.* at 13). Because the court already considered and rejected Defendant's argument and determined that Plaintiff had sufficiently stated a claim, dismissal is denied on this basis.

### D.    Qualified Immunity (Count I)

Qualified immunity is an affirmative defense under 42 U.S.C. § 1983, which immunizes officers from suit. *Gelin v. Maryland*, 132 F.4th 700, 708 (4th Cir. 2025). The Fourth Circuit previously laid out the relevant analysis:

> Our analysis asks two questions: "whether the facts make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (cleaned up). If the answer to either is no, immunity attaches. We may address the questions in "the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242[] (2009).

17

*Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023); *see also Zorn v. Linton*, No. 25-297, slip op. at 3 (U.S. Mar. 23, 2026) ("Government officials enjoy qualified immunity from suit under §1983 unless their conduct violates clearly established law."). The court has already determined that Mr. Akinola has pleaded a violation of a constitutional right, so only the second prong remains in question. The defendant asserting the qualified immunity defense bears the burden of proof on whether the right at issue was clearly established. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

In some situations, the Fourth Circuit has found that the test for deliberate indifference for stating an Eighth Amendment violation satisfies the qualified immunity analysis:

> Here, the Eighth Amendment prohibits only intentional conduct: a minimum of "'deliberate indifference' to inmate health or safety" is required. *Farmer*[ *v. Brennan*], 511 U.S. [825,] 834[ (1994)] (citation omitted). That means correction officers "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference" before liability attaches. *Id*. at 837[]. It follows that when "plaintiffs have made a showing sufficient to" demonstrate an intentional violation of the Eighth Amendment, "they have also made a showing sufficient to overcome any claim to qualified immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). "[T]he two inquiries effectively collapse into one." *Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996). Dismissal, in other words, remains

> improper so long as the officers' mental state
> remains genuinely in issue.

*Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) (alterations to citations added).  While the *Thorpe* test does not apply in every Eighth Amendment case, *see Pfaller v. Amonette*, 55 F.4th 436, 446 (4th Cir. 2022), its analysis weighs in favor of declining to dismiss the case based on qualified immunity at this time.  As described above, the court has already found that Mr. Akinola sufficiently pleaded both the objective and subjective parts of the deliberate indifference test to defeat a motion to dismiss. Officer Lavin focuses his arguments on the sufficiency of the complaint, which is no longer at issue.  Based on the information available and the lack of discovery, dismissing at this time on qualified immunity grounds would be inappropriate.

Moreover, Officer Lavin has failed to meet his burden to demonstrate that the rights at issue were not clearly established. Plaintiff brings two § 1983 claims: one related to Officer Lavin's alleged actions forcing him to proceed down the wet stairs without an escort while shackled, and one related to Officer Lavin's alleged delay in getting medical attention after Plaintiff's fall. (ECF No. 70, at 12-13).  To be entitled to qualified immunity, Officer Lavin must prove that the rights at issue were not clearly established at the time.  Officer Lavin has not met his burden. First, for the claim related to Mr. Akinola walking down the

stairs, it is not even clear that Officer Lavin has articulated *any* right that he claims was not clearly established at the time. The only right that he seems to point to is the right not to be "forced" to proceed down wet stairs:

> Even if the factual allegations in Plaintiff's Amended Complaint are taken as true, it is not alleged that CO Lavin took any action that violates any clearly established constitutional right of which a reasonable public official would have known.  In fact, as noted, CO Lavin never *forced* Plaintiff to proceed down the wet stairs, unlike the correctional officers in [*Anderson v. Morrison*, 835 F.3d 681 (7th Cir. 2016)].

(ECF No. 81-1, at 26-27).  Officer Lavin cites a single Seventh Circuit case but does not identify any cases within the Fourth Circuit to support his position.  This is insufficient.  *Pevia v. Moyer*, No. 20-cv-3270-ELH, 2023 WL 3740562, at *8 (D.Md. May 30, 2023) (denying qualified immunity where "defendants present a boilerplate qualified immunity argument without application of the [relevant] law to the facts").  Second, for Mr. Akinola's medical care claim, Officer Lavin argues that the complaint "fails to demonstrate that any routine delay in Plaintiff being seen by the medical department was at the hands of, or decision of, [Officer] Lavin."  (ECF No. 81-1, at 27).  But, once again, the court has already determined that Mr. Akinola has stated a claim against Officer Lavin for the delay in medical care.  Officer Lavin entirely fails to explain why this right was not clearly

established at the time of the events in this case.  The motion to dismiss on qualified immunity grounds will be denied.

Additionally, Defendant has failed to engage adequately with the facts in the complaint at the motion to dismiss stage. Defendant argues that he "never *forced* Plaintiff to proceed down the wet stairs."  (*Id.*).[7]  But this argument does no good on a motion to dismiss.  Mr. Akinola has clearly alleged in his amended complaint that Officer Lavin forced him down the stairs.  (*See, e.g.,* ECF No. 70 ¶¶ 23, 25 ("Officer Lavin made clear that he was nonetheless ordering Mr. Akinola to walk out of the shower and down the stairs: 'I'm giving you a direct order,' said Officer Lavin. . . Officer Lavin again commanded Mr. Akinola to walk down the stairs.")).  Officer Lavin has failed to carry his burden, and the court will not dismiss on qualified immunity at this juncture.

### E.    Supplemental Jurisdiction (Count II)

Officer Lavin asks the court to decline to exercise supplemental jurisdiction over Count II, as it is a state law claim.  (ECF No. 81-1, at 19).  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of

---

[7] The use of the word "force" should distinguish between physical force, which might implicate the use of constitutionally excessive force, and a verbal command type of force, which is alleged here and might support a deliberate indifference claim.

the same case or controversy.'" *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (quoting 28 U.S.C. § 1367(a)). Officer Lavin's argument is predicated on his earlier argument that the only federal claim against him should be dismissed. (ECF No. 81-1, at 20). He does not assert that the federal and state claims are not part of the same "case or controversy." As described above, the court is not dismissing the federal claim. Because there is still a federal claim in this case that makes up a part of the same "case or controversy" as the state law claim, dismissal is unwarranted.

### F.    Maryland Tort Claims Act (Count II)

Officer Lavin argues that he is immune from suit under the Maryland Tort Claims Act ("MTCA"). (ECF No. 81-1, at 21). The MTCA "grants immunity to State personnel from liability 'for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence.'" *Francis v. Maryland*, No. 21-cv-1365-ELH, 2023 WL 2456553, at *23 (D.Md. Mar. 10, 2023) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West)). Because the MTCA expressly excludes immunity from gross negligence, the court will consider if Plaintiff has sufficiently pleaded gross negligence to survive a motion to dismiss.

> Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or

property of another, something more than simple negligence, and likely more akin to reckless conduct." [*Nero v. Mosby*, 890 F.3d 106,] 127–28 [(4th Cir. 2018)] (cleaned up). "A government official commits gross negligence 'only when he or she inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist.'" *Id.* at 128 (quoting *Cooper v. Rodriguez*, 443 Md. 680, [708] (2015)).

*Rice v. Cecil County*, 751 F.Supp.3d 574, 588 (D.Md. 2024).

Officer Lavin's factual disputes with Mr. Akinola's amended complaint again misunderstand the burden at the motion to dismiss stage, where the court accepts the facts in the complaint as true. Mr. Akinola alleges that, after he came out of the shower, he realized that Officer Lavin intended to have him walk down the metal staircase with wet shoes while shackled, which meant he would not be able to use his arms to support or brace himself. (ECF No. 70 ¶ 20). Mr. Akinola asked where the second officer was, who could support him while Officer Lavin supported his cellmate, and Officer Lavin told him "you'll be fine." (*Id.* ¶ 23). When Mr. Akinola hesitated, Officer Lavin said, "I'm giving you a direct order." (*Id.*). Without any escort and in front of Officer Lavin and his cellmate, "Officer Lavin repeatedly told Mr. Akinola to 'go ahead,'" then moved at a fast pace, pushing both Mr. Akinola and his cellmate ahead of him. (*Id.* ¶ 25, 27). As Officer Lavin "rush[ed], moving the inmates quickly and impatiently," Mr.

23

Akinola's cellmate "told Officer Lavin to slow down because it was wet." (*Id.* ¶ 27).  Mr. Akinola followed orders, slipped, and fell. On these facts, Mr. Akinola has sufficiently stated a claim for gross negligence.  Officer Lavin was repeatedly asked about having an escort for Mr. Akinola and slowing down on the stairs yet knowingly forced Mr. Akinola into a dangerous situation for an unescorted inmate.  These facts raise a plausible claim that Officer Lavin displayed "a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 443 Md. 680, 686 (2015) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)).  Because Mr. Akinola has sufficiently alleged that Officer Lavin acted with gross negligence, he has overcome MTCA immunity.  *See Rice*, 751 F.Supp.3d at 588.  The motion to dismiss will be denied on this basis.

### G.    Administrative Exhaustion Under the MPLA (Count II)

Finally, Defendant argues that Plaintiff has failed to meet the administrative exhaustion requirements under the MPLA.  The MPLA is, in some ways, more onerous than the PLRA.  Notably, the MPLA requires a plaintiff to pursue "any available proceedings for judicial review" after administrative exhaustion and attach proof of administrative exhaustion to the complaint. Md. Code Ann., Cts. & Jud. Proc. § 5-1003 (West).  The MPLA's requirement that proof of administrative exhaustion be attached to the complaint is not relevant to this action, however, because it does not apply in

24

federal court.  *See Olumakinde v. Baltimore Cnty. Det. Ctr*., No. 24-cv-0943-TDC, 2024 WL 5007456, *3 (D.Md. Dec. 6, 2024) (stating the MPLA requirement that proof of administrative exhaustion be attached to the complaint "is not applicable to complaints filed in federal court"); *see also Berk v. Choy*, 146 S.Ct. 546, 557 (2026) (holding that a state law requiring an affidavit to be attached to certain complaints did not apply in federal court, as it conflicted with Fed.R.Civ.P. 8).

It is far from clear, however, whether the MPLA's administrative exhaustion requirement, which includes "any available proceedings for judicial review," applies in this context, whether it is cognizable on a motion to dismiss, or whether the facts are uncontroverted so as to be properly assessed on this record.  Plaintiff encourages the court to consider only whether he was incarcerated *at the time of filing the operative amended complaint* when determining if the MPLA applies.  (ECF No. 87, at 36).  Officer Lavin argues that the fact that he was incarcerated when he initiated the action means that administrative exhaustion under the MPLA is required.  (ECF No. 91, at 15).  Maryland courts have not wrestled with the question of whether filing an amended complaint after the plaintiff is released from prison obviates the administrative exhaustion issue. Beyond the question for Maryland courts, it is unclear following

the United States Supreme Court's decision in *Berk* whether such a heightened requirement conflicts with federal procedural requirements. *See D.C. Water and Sewer Auth. v. Samaha Associates, PC*, No. 23-cv-1328-ABA, 2026 WL 654130, at *5 (D.Md. Mar. 9, 2026) (finding that a Maryland statute, which required a certificate to be filed shortly after certain complaints, was inapplicable in federal court following *Berk*).   As the court is maintaining jurisdiction of the state law claim and proceeding on the federal claim, the court will defer decision on this issue "until and unless it becomes clear that [its] resolution is necessary to the outcome of this litigation."   *Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 636 F.Supp.2d 481, 483 (D.Md. 2009) (reciting an earlier decision declining to resolve a novel issue of Maryland law or to certify it to the then Maryland Court of Appeals. *Schwaber v. Hartford Acc. & Indem. Co.*, No. 06-cv-0956-JFM, 2007 WL 4532126, at *7 (D.Md. Dec. 17, 2007)).   Particularly given the confused state of the record about administrative exhaustion, it is premature to resolve the issue under the MPLA.

### H.   Motion to Stay

Proceeding parallel to this case is the bankruptcy case of Ms. Stafford-Shroyer's employer.   *See In re Tehum Care Servs., Inc.*, No. 23-90086 (Bankr. S.D.Tex.).   Within that case, a party filed a motion to enjoin numerous pending cases, including Plaintiff's case in this court.   (ECF No. 73-1, at 1, 28).   On

June 6, 2025, Ms. Stafford-Shroyer moved to stay this case until the Bankruptcy Court issues an order deciding the motion. (ECF No. 73, at 1). The Bankruptcy Court issued an order deciding the motion on October 30, 2025. (ECF No. 99-1). As Plaintiff observes, this order "renders moot" Ms. Stafford-Shroyer's motion to stay, (ECF No. 99, at 1), which will be denied accordingly. Moreover, the Bankruptcy Court held that Plaintiff "is not bound by the consensual releases" in the bankruptcy reorganization plan, (ECF No. 99-1, at 8); therefore, this case may proceed.

The court expects that Ms. Stafford-Shroyer will respond to the amended complaint shortly.

## IV. Conclusion

For the foregoing reasons, Officer Lavin's motion to dismiss or, in the alternative, for summary judgment will be denied, and Ms. Stafford-Shroyer's motion to stay will be denied as moot. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
